J. Randolph Huston (SBN 40044)
jrh@wwtwlaw.com
WALKER WRIGHT TYLER & WARD
500 South Grand Avenue, 19th Floor
Los Angeles, CA 90071
Tel: (213) 629-3571
Fax: (213) 627-7795

David A. Shough
dshough@das-law.com
LAW OFFICE OF DAVID A. SHOUGH
853 Dayton Oxford Rd.
Carlisle, OH 45005
Tel: (937)242-7325
Fax: (937)719-4410

Attorneys for Defendant and Counterclaimant
LASTAR, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXTENGINE VENTURES, LLC,<br><br>         Plaintiff, Respondent<br><br>vs.<br><br>LASTAR, INC.,<br><br>         Defendant, Counterclaimant. | Case No. SACV13-463-BRO (JPRx)<br><br><br>REPLY BRIEF OF DEFENDANT LASTAR, INC. IN OPPOSITION TO TRIAL BRIEF OF PLAINTIFF NEXTENGINE VENTURES, LLC |

Pursuant to the Court's Amended Minutes of Pretrial Hearing (Doc.# 85), Defendant/Counterclaimant Lastar, Inc. ("Lastar") submits this reply brief in opposition to the Trial Brief (Doc. #90) submitted by Plaintiff/Respondent NextEngine Ventures LLC ("NEV").

**I.      Introduction** ...................................................................................2

**II.     NEV's pervasive errors**.................................................................3

  **A.    NEV's wrongdoing arises from using the domain, not purchasing it.**...3

  **B.    Lastar and the ACPA are focused on misuse, not ownership for ownership's sake.**.................................................................................5

  **C.    NEV's conduct is at issue, not Lastar's.**..................................6

**III.    NEV's Other Errors**.......................................................................7

**IV.     The Elements of the Claims.**.........................................................11

  **A.    NEV's claim under 15 U.S.C. § 1114(2)(D)(iv)** ...................11

  **B.    NEV's claim under 15 U.S.C. § 1114(2)(D)(v)**.......................11

    **1.    Registration and Use of the Domain**....................................12

    **2.    Distinctiveness of the CABLES TO GO registered trademark**..........12

    **3.    Confusing similarity**..............................................................12

    **4.    Bad faith intent to profit**.......................................................12

**V.      Conclusion**....................................................................................13

I.      Introduction

The Court's Minutes of Pretrial Hearing (Doc.# 85) called for the parties to file, by July 23, counter-briefs in response to their respective proposed findings of fact and conclusions of law, which had been filed the previous week.  Instead, NEV filed what it termed a "Trial Brief," which makes no specific opposition or even reference to Lastar's proposed findings and conclusions.  The present paper was intended by the Court's Minutes to be a reply brief.  Having, however, no counter-brief to reply to, Lastar will instead present counter-arguments to the paper NEV *did* file.  Like its proposed findings and conclusions filed earlier, NEV's Trial Brief shows it cannot prove its claims.

## II.    NEV's pervasive errors

NEV's Trial Brief contains three pervasive errors – three areas where NEV directs its arguments to the wrong issues.  They are identified and rebutted below.

### A. NEV's wrongdoing arises from using the domain, not purchasing it.

NEV's first pervasive error is to focus only on its purchase and ownership of the domain name, ignoring how it misused the domain by redirecting it to NEV's affiliated commercial websites.  The case for NEV's "bad faith intent to profit" in this action is simple:  Choosing to remain willfully ignorant that the domain name was confusingly similar to a distinctive trademark of another, NEV used the domain name to divert internet traffic to its affiliated commercial websites, thereby increasing the potential for revenue.

If NEV had not made any use of the domain name – if gocables.com resolved to a blank page or returned an error – bad faith might not be provable.  For example, in *Southern Grouts & Mortars, Inc. v. 3M Co*., 575 F. 3d 1235, 1239 (11th Cir. 2009), 3M maintained registration of a domain name, diamondbrite.com, which contained a trademark 3M no longer used, but the domain name did not direct to any active website, resolving instead to a "page cannot be displayed" message.  Southern Grouts, which used the trademark DIAMOND BRITE for its own products, sued 3M under the ACPA.  Because the domain name did not lead to any website, the court found there was no bad faith intent to profit. *Id.* at 1249-50 & n.8.  In particular, Southern Grouts tried to show that 3M attempted to divert potential customers by alleging that the domain was redirected to another 3M product site; *however*, Southern Grouts presented no admissible evidence of such

redirect.  *Id.*  Absent any use of the domain, there was no bad faith intent to profit.[1]

By contrast, here NEV admits that it *did* use the domain to redirect to affiliated commercial sites to increase revenue.

Thus NEV's moan that it "bought a lawsuit when it bought Alzatari's list of domains," *NEV Brief,* p. 13, ignores NEV's real misconduct.  It made itself liable under the ACPA not when it bought the domain but when it used the domain to divert traffic to commercial sites.

Likewise, NEV's impassioned argument that "holding domains for investment" is a "*bona fide* business," *NEV Brief,* p. 22, is a straw man.  NEV's liability arises not from "holding" the domains but from redirecting them for profit.

NEV's plea that "NextEngine, being a mere repository of investment domains, has no need to generate income," *NEV Brief,* p. 23, ignores that fact that it nevertheless *did* use or allow use of the domain name to generate income.

--------

[1] Diverting traffic to the cybersquatter's commercial site is not the only kind of misuse that gives rise to liability under the ACPA:

In the Senate Report accompanying the ACPA, cybersquatters are defined as those who: (1) "register well-known brand names as Internet domain names in order to extract payment from the rightful owners of the marks;" (2) "register well-known marks as domain names and warehouse those marks with the hope of selling them to the highest bidder;" (3) "register well-known marks to prey on consumer confusion by misusing the domain name to divert customers from the mark owner's site to the cybersquatter's own site;" (4) "target distinctive marks to defraud consumers, including to engage in counterfeiting activities."

*Lucas Nursery and Landscaping v. Grosse*, 359 F.3d 806, 810 (6th Cir.2004) (quoting S.Rep. No. 106-140 (1999), 1999 WL 594571, at *5-6 (emphasis added)).

**B. Lastar and the ACPA are focused on misuse, not ownership for ownership's sake.**

In a similar misdirecting vein, NEV's second pervasive error is to focus on Lastar's purported desire for ownership of the domain name, when the real motive behind Lastar's enforcement activity has been to prevent *misuse* of the domain name. Lastar has never asserted exclusive rights to the domain name. Indeed, under the ACPA, transfer of *ownership* of the domain name is not the necessary outcome of an action. The statute provides that transfer of the domain from a cybersquatter to the trademark holder is only *one* of the curative actions the Court can take. 15 U.S.C. § 1125(d)(1)(C) ("a court may order the forfeiture or cancellation of the domain name *or* the transfer of the domain name to the owner of the mark.)(emphasis added). The focus of the statute, and of Lastar's claims, is to stop misuse of the domain by NEV, not determining who should own it.

Making this a dispute about exclusive ownership betters fits NEV's narrative, however, because it allows it to argue that Lastar "abandoned" the right to own the domain name when it failed to register the domain when it was available. Of course, nearly every ACPA action involves a trademark holder who failed to register a domain name when it could have done, before it was registered by the alleged cybersquatter. But, just as NEV's liability arises not from mere ownership but from misuse, the harm to Lastar arises not from a domain name that sits unregistered, or registered but unused, but from a domain name that is used to divert its potential customers to other commercial sites.

Thus, NEV mischaracterizes Lastar's efforts when is calls them a "war to exercise control over GOCABLES.COM," *NEV Brief,* p. 3. Its argument that "Lastar forever lost its contractual right to acquire [the domain name]," *NEV Brief,* pp. 5-6, ignores the fact that this case is not about acquiring the domain name but about preventing its misuse. It is irrelevant that Lastar "[n]ever tried to

contact Alzatari to buy the domain," *NEV Brief*, p. 6, since Alzatari was not misusing the domain.

NEV's contention that research of the history of disputes about the domain name would show that Lastar "abandon[ed] all judicially cognizable claims" to it, *NEV Brief*, pp. 12-13, is a *non sequitur*. That Lastar failed to registere the domain, intentionally or inadvertently, does not mean it was up for grabs to be used in a manner unlawful under the ACPA. *Trademark law does not require that Lastar either register a domain name or else give up the right to complain about its misuse.*

**C. NEV's conduct is at issue, not Lastar's.**

NEV's third pervasive error is to focus on Lastar's conduct rather than its own. Of the fifteen page factual section of NEV's brief, over eleven pages are devoted to the actions and testimony of Lastar, often skillfully described in a way that makes every step Lastar took seem sinister.

Notwithstanding NEV's wrong focus, the ACPA is concerned almost exclusively with the conduct of the alleged cybersquatter. 15 U.S.C. § 1125(d). In fact, other than the owning a distinctive trademark (a fact that NEV does not appear to dispute in this case), the *only* conduct of the trademark owner that is addressed in the ACPA is in the so-called "reverse hijacking" provisions of 15 U.S.C. § 1114(2)(D)(iv), where the mark owner can be liable if it made "a knowing and material misrepresentation . . . that a domain name is identical to, confusingly similar to, or dilutive of a mark." Ironically, though NEV spends a good deal of energy demonizing Lastar's conduct, and though NEV *does* claim reverse hijacking under this subsection (iv), it never makes any showing or argument that among Lastar's sins was this sole wrongful conduct addressed in the statute – a misrepresentation about confusing similarity.

### III.    NEV's Other Errors

NEV's Brief contains numerous other errors of fact, law, or understanding, addressed *seriatim* below.

NEV notes, *NEV Brief,* p. 7, that its owner, Mr. Gleissner, testified that he had no plans to begin a cable manufacturing business.  NEV averred the exact opposite in both its original (¶ 5) and amended (¶ 7) complaints in this action. ("Plaintiff intends to use GOCABLES.COM for a cable manufacturing business venture.")  NEV's contentions seem to be flexible as they best meet its arguments.

NEV asserts, *NEV Brief,* p. 7-8,  that the sexymandarin.com website (one of the affiliated redirect sites) was mere parody, and non-commercial, citing the testimony of Mr. Gleissner.  That assertion ignores (1) Mr. Gleissner's admission that he was "not familiar with the website," *May 29, 2014 Dep. of Michael Gleissner*, pp. 33/22-34/1, and (2) the obvious commercial activity taking place on the site. *Ex. 35.*

NEV argues that the alleged parodical nature of sexymandarin.com protects use of the domain name from action.  *NEV Brief,* p. 8.  That might be the case if the sexually-oriented content of the website were a parody or other commentary on Lastar or its CABLES TO GO brand.  *Lucas Nursery and Landscaping, Inc.*, 359 F.3d 806, 810 (6th Cir. 2004)(good faith found where domain holder registered domain to host site complaining about service from trademark holder). But here, the domain name was used simply for the commercial purpose of drawing traffic to the site, as well as to other strictly commercial sites, having no relationship to the domain.

NEV devotes substantial energy to cast doubt on whether, as Ex. 24 suggests, Lastar attempted to contact NEV to purchase the domain before it took legal action.  *NEV Brief,* pp. 9-10.  NEV spends no energy demonstrating why it matters.  Whether Lastar attempted to contact NEV before filing the UDRP action is simply immaterial.

As in prior papers, NEV continues to assert, as grounds for innocence, that the redirect websites and Lastar's CABLES TO GO business do not offer the same products or services. *E.g. NEV Brief,* p. 11 ("Lastar presents no evidence here that any association might be likely to arise between the product offerings at Lastar's CABLESTOGO.COM website and the Redirect Site."); p. 12 ("harmless redirects to unrelated sites that do not offer cables for sale"). The ACPA directs, however, that liability shall be determined "without regard to the goods or services of the parties." 15 U.S.C. § 1125(d)(1)(A).

NEV's attempt, *NEV Brief*, pp. 14-15, to brush aside the Google Analytics results, *Exs. 29, 30 & 31,* as evidence of confusing similarity between GOCABLES and CABLES TO GO, misapprehends the significance of those reports. The reports show that a significant number of people who searched the phrase GO CABLES went from the search results to Lastar's cablestogo.com website, and some even made purchases. This is evidence of confusing similarity *not* because the search engine listed cablestogo.com among the results, as NEV contends, but because the *user chose to go* to cablestogo.com *from* those results. In other words, it is likely, and a reasonable inference, that many of those users were seeking CABLES TO GO to begin with, typed in the confusingly similar GO CABLES as a search term, found the actual site they were seeking among the results, and went there. That they typed GO CABLES instead of CABLES TO GO when seeking the latter shows that the two are confusingly similar.

NEV's attempt, *NEV Brief*, p. 15, to brush aside the persuasiveness of the TTAB's earlier finding of similarity between the two terms at issue, also misapprehends the significance of *that* evidence. The two terms are just as similar today as they were ten years ago. The other differences in the cases go to trademark infringement issues other than confusing similarity.

Ironically, on the same page NEV finishes its argument that the Court should ignore as irrelevant the substantive ruling in the TTAB dispute between

Lastar and Global, it then tries to vilify Lastar over the supposed "concealment" of the subsequent court action between those same parties in which no substantive rulings were made. *NEV Brief*, p. 15.

NEV contends first, *NEV Brief*, pp. 15-16, that the prior lawsuit was fraudulently concealed from the arbitrator in the UDRP action. Since the prior lawsuit resulted in no substantive factual or legal rulings, NEV fails to identify how the existence of the suit was even material. If NEV is suggesting that Lastar's claim regarding the similarity of the domain name and the trademark was somehow weakened because it chose to settle the lawsuit, it is ignoring Fed. R. Evid. 408 regarding the inadmissibility of offers to compromise. Further, the UDRP decision, *Ex. 34*, neither relied on nor even mentioned the TTAB decision. Further yet, the prior lawsuit was public record; if it was material, NEV could have raised it itself in the UDRP action.

NEV then complains of Lastar's failure to timely file a L.R. 83-1.3 notice of related case listing the prior lawsuit. First, it is not even clear such a filing was required since the prior litigation engendered *no* "determination of . . . questions of law and fact" at all. Second, NEV had actual knowledge of the lawsuit from at least the October 2013 filing of Lastar's Answer to the Amended Complaint (Doc. 27), ¶ 13, yet it failed itself to file a L.R. 83-1.3 notice, despite being the party who filed this case in the first place. Third, any fault of Lastar is a concern only for this Court, not NEV, since the purpose of the rule is to provide for judicial economy by steering cases to a Judge who has already addressed related issues; it is not for the benefit of the opposing party. Indeed, NEV can point to no real way is which it was prejudiced by the delay in filing the 83-1.3 notice, nor what Lastar had to gain by the supposed concealment, especially since NEV had actual notice of the lawsuit regardless, and the lawsuit was public record. The charges of concealment are baseless.

NEV begins its legal arguments with the astonishing theory, *NEV Brief,* p. 18. that, because the UDRP decision is not being reviewed and it conclusions are not entitled to deference, the default result in this case (if neither party proves its claims) is that the domain gets returned to NEV.  There is no support for such a twisted conclusion.  NEV admits the domain was transferred to Lastar as a result of the UDRP decision. *NEV Brief,* p. 17.  Under the UDRP, NEV could have prevented that transfer had it filed this action at the proper time in the proper court. *Ex. 11*, ¶ 4.k.  It did not do so, and the domain was transferred.  The ACPA gives NEV an opportunity to reverse that result, but only if it proves its claims of reverse hijacking under 15 U.S.C. § 1114(2)(D)(iv) or (v).  Since it cannot, the domain remains where it is.  Lastar was not required to file a claim in this Court at all; it did so to potentially recover damages, but it is NEV who must prove its own claims to obtain return of the domain name.  The UDRP decision is not given deference, but its result is final unless NEV were to prove its reverse hijacking claims, which it has not done.

NEV's argument for injunctive relief returning the domain name, *NEV Brief*, pp. 19-20, is meaningless unless NEV also proves it has suffered legal injury under its reverse hijacking claims, which it has not done.

NEV's arguments *against* the injunctive relief that Lastar supposedly seeks, *NEV Brief*, pp. 23-24,  is a nullity because Lastar does not seek injunctive relief under its ACPA claim; it does not need such relief because it holds the domain name registration.

In the midst of that unneeded argument, NEV posits, p. 24, that  "Congress when enacting the ACPA could have imputed knowledge of registered trademarks and the litigation history of domains to those against whom charges of cybersquatting are leveled, but it did not."  To the contrary, Congress did in fact provide that registration of a trademark "is constructive notice of the registrant's claim of ownership thereof."  15 U.S.C. § 1072.

NEV's discussion of its laches defense, *NEV Brief*, pp. 24-25, admits that no presumption of laches arises in this case. It makes no direct showing of unreasonable delay by Lastar, and the only prejudice it alleges relates to a supposed loss of evidence regarding Lastar's conduct in the mid 1990s when it registered its own domain. NEV does not show that the evidence it cites was material to any real issue in the case, nor that the evidence would have existed had Lastar brought the action in 2010, when NEV contends the claim arose. There is no support here for a laches defense. Significantly, NEV does not even try to argue in favor of its other affirmative defense of equitable estoppel.

## IV. The Elements of the Claims.

A brief review of the actual elements of the claims at issue, as addressed – or not addressed – in NEV's Trial Brief shows that NEV has not proven its claims and judgment should be entered in favor of Lastar.

### A. NEV's claim under 15 U.S.C. § 1114(2)(D)(iv)

To prevail under 15 U.S.C. § 1114(2)(D)(iv), NEV must prove, among other things, that the domain name was transferred to Lastar "based on a knowing and material misrepresentation by [Lastar] that a domain name is *identical to, confusingly similar to, or dilutive of* a mark . . .." *Id.* (emphasis added). NEV's Trial Brief makes no mention of any such alleged misrepresentation. This claim is not proven.

### B. NEV's claim under 15 U.S.C. § 1114(2)(D)(v)

To prove that its conduct was not unlawful under 15 U.S.C. § 1114(2)(D)(v), NEV must prove either that (1) it did not register or use the domain name GOCABLES.COM, (2) the CABLES TO GO mark is not distinctive, (3) GOCABLES and CABLES TO GO are not confusingly similar, or (4) NEV did not register or use the domain in bad faith. *Ricks v. BMEzine.com, LLC,* 727 F. Supp. 2d 936, 960 (D. Nev. 2010). NEV has not established any of these elements.

1

### 1.    Registration and Use of the Domain

NEV admits that it registered the domain name and used it to redirect to affiliated commercial sites.  *NEV Brief*, pp. 7-8.

### 2.    Distinctiveness of the CABLES TO GO registered trademark

NEV's brief makes no argument that the CABLES TO GO registered trademark is not distinctive.

### 3.    Confusing similarity

NEV's Brief makes no showing that the domain GOCABLES and its trademark CABLES TO GO are not confusingly similar, other than its misguided challenges, discussed above, to some of Lastar's evidence.

### 4.    Bad faith intent to profit

NEV's brief does not seriously, or even expressly, contest that it used the domain name as a redirect with the intent to increase revenue at the redirect sites.[2] Its essential, and oft-repeated, argument is that it could not have had a bad faith intent to profit from the CABLES TO GO mark because it did not *know* of the CABLES TO GO mark.  To accept this argument is to encourage willful ignorance.  By law, NEV had constructive notice of the mark.  15 U.S.C. § 1072. A simple and prudent clearance search would have given it actual knowledge.  *Cf. Interstellar Starship Servs., Ltd. v. Epix, Inc.,* 304 F.3d 936, 947 (9th Cir.2002)(lack of knowledge of mark is evidence of good faith where domain holder searched the domain name on internet before adopting it and did not find trademark holder).

---

[2] For the sake of brevity, Lastar will rely on its discussion in its proposed findings and conclusions (Doc. #79-1), pp. 11-12, of the permissive, non-exclusive bad faith factors listed in the ACPA to rebut the discussion of those factors set forth in NEV's Trial Brief, pp. 20-23.

The fact remains that NEV used the domain for whatever traffic it might divert, an action that assumes some internet users would type in the domain name, an assumption that can only be based on an expectation that the domain name resembles someone's trademark, even if NEV did not know whose.  It is a maxim of law that "a man is presumed to intend the natural consequences of his acts." *Yates v. Boteler*, 163 F.2d 955, 957 (9th Cir. 1947).  NEV intended, in bad faith, to capitalize on the good will of the domain name for commercial gain, even if it did not know whose mark it represented. This is not good faith.

## V.    CONCLUSION

NEV's Trial Brief does nothing to plug the holes in its proposed findings and conclusions or to rebut the findings and conclusions proposed by Lastar. Respectfully, the Court should adopt the Lastar's proposed findings and conclusions in their entirety.

Respectfully submitted,

DATED:  July 30, 2014              LAW OFFICE OF DAVID A. SHOUGH

By:___/S/_____
   David A. Shough
Attorneys for Defendant and
Counterclaimant, LASTAR, INC.