# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| NEXTENGINE VENTURES, LLC, | CV 13-0463 TJH (JPRx) |
| Plaintiff/Counter-Defendant, | |
| v. | Findings of Fact |
| | and |
| LASTAR, INC., | Conclusions of Law |
| Defendant/Counter-Claimant. | |
| AND RELATED COUNTERCLAIMS | |

The parties waived trial by jury, and stipulated to a bench trial on written documents, including depositions, exhibits and briefs.  The Court, having considered the submitted briefs and evidence, and having heard closing arguments, now, issues the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1.      The evidence does not establish the ownership, membership or domicile of Plaintiff/Counter-Defendant NextEngine Ventures, LLC ("NEV").  While there are assertions that Michael Gleissner is NEV's sole member, there is no evidence to establish

those assertions.  During Gleissner's deposition, he could not recall the state where NEV was registered as a limited liability company.  Gleissner merely confirmed that NEV was within his portfolio of companies.

2.      NEV is in the business of, *inter alia*, acquiring internet domain names for investment purposes.

3.      Defendant/Counter-Claimant Lastar, Inc. ("Lastar") is an Ohio corporation in the business of manufacturing and selling computer, network, audio/video and other electronic connectivity products.

4.      The internet domain named Gocables.com is a defendant *in rem*.

5.      Other than as to the *in rem* defendant, personal jurisdiction and venue are not disputed by the parties.

6.      Lastar first began using its Cables To Go mark in commerce in 1984. Around 1995, Lastar began marketing on the internet using the domain name Cablestogo.com.

7.      Lastar's primary internet domain name is Cablestogo.com.

8.      In 2001, Lastar learned that Global Manufacturing Solutions, LLC ("Global") had applied for federal registration of the trademark Go Cables and had registered the Gocables.com domain name.

9.      The Gocables.com domain name does not incorporate the Cables To Go trademark.

10.     In May, 2002, Lastar filed an opposition to Global's trademark application.

11.     In March, 2004, the Trademark Trial and Appeal Board ("TTAB") issued a decision in favor of Lastar and denied Global's trademark application.

12.     Following the TTAB decision, Global filed case number CV 04-4499 TJH in this Court against Lastar asserting Global's right to use the Go Cables mark and domain name.

13.     On September 7, 2005, Global voluntarily dismissed its suit against Lastar pursuant to a settlement agreement.  Pursuant to that settlement agreement, Global was

permitted to use the Gocables.com domain name until May, 2010, and, then, was obligated to transfer the Gocables.com domain name to Lastar no later than August 1, 2010.

14.     In 2006, Lastar registered Cables To Go as a federal trademark.

15.     On July 3, 2010, Global allowed the registration for the Gocables.com domain name to lapse, and notified Lastar of the lapse so that Lastar could register the Gocables.com domain name.

16.     Lastar failed to immediately register the Gocables.com domain name, resulting in the Gocables.com domain name becoming available for registration by others. During his deposition, Lastar's president, William Diederich, testified that Lastar was, indeed, notified by Global of the registration lapse and that, for reasons unknown to him, Lastar failed to register the Gocables.com domain name, thereby allowing that domain name to become available for registration by anyone else.

17.     On July 5, 2010, Obada Alzatari registered the Gocables.com domain name.

18.     On October 4, 2010, NEV acquired the Gocables.com domain name from Alzatari as part of a bulk purchase of approximately 344 domain names for $90,000.00, or about $260.00 per domain name.

19.     Later in 2010, NEV registered the Gocables.com domain name with GoDaddy, Inc. ("GoDaddy"), a domain name registrar.

20.     At the time of NEV's registration of the Gocables.com domain name, Cables To Go was a distinctive trademark.

21.     Lastar's failure to immediately register the Gocables.com domain name after it was notified by Global that the Gocables.com domain registration had lapsed and was available for registration, led to NEV's registration and use of the Gocables.com domain name to NEV's detriment.

22.     All domain name registrants, including NEV, subscribe to the Uniform Domain Name Dispute Resolution Policy ("UDRP") when they register domain names with certified domain registrars of the Internet Corporation for Assigned Names and

1    Numbers ("ICANN").

2        23.    GoDaddy is an ICANN certified domain registrar.

3        24.    The UDRP requires domain name registrants, such as NEV, to "represent
4    and warrant" that "to [the registrant's] knowledge, the registration of the domain name
5    will not infringe upon or otherwise violate the rights of any third party."

6        25.    The UDRP places responsibility on the domain name registrant to determine
7    whether the domain name infringes or violates another party's rights.

8        26.    At no time did NEV make any effort to determine whether the Gocables.com
9    domain name infringed the rights of any other party.

10       27.    NEV used the Gocables.com domain name to redirect internet traffic
11   intended for Gocables.com to commercial sites operated by NEV or its affiliates, such as
12   sexymandarin.com.

13       28.    NEV's use of the Gocables.com domain name to redirect internet traffic to
14   other commercial websites was intended to increase traffic to those other commercial
15   websites.

16       29.    Sexymandarin.com offered commercial goods for sale.

17       30.    Around January, 2012, Lastar first discovered NEV's use of the
18   Gocables.com domain name.

19       31.    In January, 2013, Lastar filed a complaint against NEV in the National
20   Arbitration Forum ("NAF"), pursuant to the UDRP, seeking transfer of the Gocables.com
21   domain name to Lastar.

22       32.    At the conclusion of arbitration proceedings, the NAF found that NEV's use
23   of the Gocables.com domain name violated the UDRP.

24       33.    On March 6, 2013, GoDaddy received the NAF decision. That same day,
25   GoDaddy sent an email notice to NEV advising that GoDaddy would transfer the
26   Gocables.com domain name registration to Lastar in ten business days, unless NEV sent
27   GoDaddy proof that a court action had been filed regarding the ownership of the
28   Gocables.com domain name.

34.     On March 20, 2013, the tenth business day from the date of GoDaddy's notice, NEV filed this action seeking return of the Gocables.com domain name. However, NEV sent its proof of suit to GoDaddy after GoDaddy closed for business that day.

35.     GoDaddy transferred the Gocables.com domain name registration to Lastar.

36.     Pursuant to the Final Pre-trial Conference Order, NEV asserted:

1.     Three claims against Lastar:

A.     Reverse domain hijacking, pursuant to 15 U.S.C. § 1114(2)(D)(iv);

B.     Injunctive relief, pursuant to 15 U.S.C. § 1114(2)(D)(v); and

C.     Declaratory relief, pursuant to 28 U.S.C. § 2201.

2.     An *in rem* claim against the Gocables.com domain name for quiet title, pursuant to Cal. Code Civ. Proc. §§ 760.010 – 764.080.

37.     Also, pursuant to the Final Pre-trial Conference Order, Lastar asserted a counterclaim against NEV for cybersquatting, pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d).

38.      In response to the counterclaim, NEV asserted the affirmative defenses of laches and estoppel.

39.     The domain name registry for Gocables.com is Verisign, Inc., headquartered in Mountain View, California.

40.     The domain name registrar for Gocables.com is GoDaddy, headquartered in Scottsdale, Arizona.

41.     When NEV obtains domain names, it makes no effort to determine whether those domain names infringe the rights of any other parties.

42.     Some of the domain names purchased by NEV in the bulk group that included Gocables.com are identical to registered trademarks held by others, such as, Airmail.co, Paypilot.com, and Ribbonwood.com.

43.     When NEV registered the Gocables.com domain name, it was not aware of

1    Lastar's Cables To Go trademark, or of the dispute between Global and Lastar.

2        44.    NEV holds no trademark or other intellectual property rights in the
3    Gocables.com domain name.

4        45.    The Gocables.com domain name does not consist of NEV's, or any of its
5    related entities', legal name, nor a name otherwise commonly used to identify NEV or
6    any of its related entities.

7        46.    The parties agree that NEV made no use of the Gocables.com domain name
8    in connection with the bona fide offering of any goods or services.

9        47.    NEV did not make a bona fide non-commercial or fair use of the Cables To
10   Go mark in a site accessible under the Gocables.com domain name.

11       48.     NEV did not intend to divert customers from Lastar's Cablestogo.com
12   website to another site located at Gocables.com

13       49.    NEV's use of the Gocables.com domain name did not harm the goodwill
14   earned by the Cables To Go trademark.

15       50.    NEV's use of the Gocables.com domain name did not create a likelihood of
16   confusion between Gocables.com and Cablestogo.com, or as to either domain's source,
17   sponsorship, affiliation, or endorsement.

18       51.    NEV made no offer to transfer, sell, or otherwise assign the Gocables.com
19   domain name to Lastar, or any third party, for financial gain without having used, or
20   having an intent to use, the Gocables.com domain name in the bona fide offering of any
21   goods or services.

22       52.    No evidence was presented to suggest that NEV ever made an offer to
23   transfer, sell, or otherwise assign any domain name for financial gain without having
24   used, or having an intent to use, that domain name in the bona fide offering of any goods
25   or services.

26       53.    NEV did not provide any false information when it registered the
27   Gocables.com domain name.

28       54.    NEV has not registered or acquired multiple domain names that it actually

knew were confusingly similar to the marks of others that were distinctive at the time of registration of those domain names, or that were dilutive of famous marks of others that were famous at the time of registration of those domain names.

55.   Based on the unique facts and circumstance of this case, NEV exhibited a bad faith intent to profit when it registered the Gocables.com domain name without first conducting a reasonable investigation, let alone any investigation, as to whether Gocables.com infringed on any other party's rights; by having a practice and custom of registering domain names without first conducting reasonable investigations as to the whether the domain names infringed on any other party's rights; and by using the Gocables.com domain name to redirect internet users to NEV's other commercial sites.

56.   NEV is not entitled to the shelter provided by the bad faith safe harbor of the ACPA because it was not reasonable for NEV to believe that its use of the Gocables.com domain name was lawful without first conducting a reasonable investigation as to whether the Gocables.com domain name infringed on any other party's rights.

57.   Lastar has no evidence that individuals searching for Cablestogo.com mistakenly went to Gocables.com.

58.   Pursuant to evidence from Google Analytics, from January 1, 2012, to May 13, 2014, 261 web browsers searching for the phrase "go cables" ended up going to Cablestogo.com.  Eight of those web browsers made purchases at Cablestogo.com, totaling $4,022.09.

59.   Cables To Go and Gocables.com contain the identical words  "Go" and "Cables."

60.   The Gocables.com domain name is confusingly similar, under the ACPA, to Lastar's Cables To Go trademark.

61.   Lastar did not knowingly and materially misrepresent that Gocables.com is confusingly similar to its Cables To Go trademark.

62.   At the commencement of this trial, Lastar owned the Gocables.com domain name.

63.     In sum, NEV registered and used the Gocables.com domain name with a bad faith intent to profit; the Gocables.com domain name was confusingly similar to Lastar's Cables To Go trademark; and Lastar's Cables To Go trademark was distinctive at the time NEV registered the Gocables.com domain name.   Consequently, NEV violated the ACPA.  Moreover, NEV is not entitled to benefit from the ACPA's bad faith safe harbor because it could not have reasonably believed that its use of the Gocables.com domain name did not violate another party's rights.   However, NEV is entitled to equitable estoppel to bar Lastar from recovering monetary damages from NEV because Lastar's conduct led to NEV's registration and use of the Gocables.com domain name.

64.     Lastar is the lawful owner, and shall retain the lawful ownership, of the Gocables.com domain name.

### CONCLUSIONS OF LAW

1.     The Court has subject matter jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331.

2.     To establish *in rem* jurisdiction over personal property, the property must be located within this District. *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 700 (9th Cir. 2010).

3.     Domain names are personal property located wherever the registry or registrar are located. *Office Depot*, 596 F.3d at 702-3.

4.     Because the registry and registrar of the Gocables.com domain name are not resident in the Central District of California, this Court lacks *in rem* jurisdiction over the Gocables.com domain name.

5.     To prevail on a claim under 15 U.S.C. § 1114(2)(D)(v), NEV must establish the following:

      A.     That the Gocables.com domain name was transferred away from NEV pursuant to a domain name registrar's policy prohibiting the registration of a domain name that is confusingly similar to another's trademark;

B.     That it filed a civil action and gave notice of the civil action to the owner of the trademark; and

C.     That its use of the domain name was not unlawful under "this chapter."

6.     The First and Second Circuits have defined "this chapter," as used in 15 U.S.C. § 1114(2)(D)(v), to mean just the ACPA, *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 18 (1st Cir. 2001); *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 382 (2nd Cir. 2003),  while the Fourth Circuit has defined that phrase to mean the entire Lanham Act, *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 626 (4th Cir. 2003).  The Ninth Circuit has not addressed this issue yet.  But the distinction is not relevant if NEV is unable to establish that it did not violate the ACPA, which is included within the Lanham Act.

7.     To establish that it did not violate the ACPA, NEV must establish any one of the following:

A.     That it did not register or use the Gocables.com domain name;

B.     That Lastar's Cables To Go trademark was not distinctive when NEV registered the Gocables.com domain name;

C.     That the Gocables.com domain name was not confusingly similar to Lastar's Cables To Go trademark; or

D.     That it did not have a bad faith intent to profit from the Gocables.com domain name.

15 U.S.C. § 1125(d)(1)(A).

8.     Federal registration of a trademark establishes the distinctiveness of that trademark.  *See Lahoti v. Vericheck, Inc.*, 586 F.3d 1190, 1199 (9th Cir. 2009).

9.     To determine whether the Gocables.com domain name is confusingly similar to the Cables To Go trademark, the Court  must compare the Gocables.com domain name to the Cables To Go trademark.  *See GoPets, Ltd. v. Hise*, 657 F.3d 1024, 1032 (9th Cir. 2011).

10. A domain name may be confusingly similar to a trademark if it incorporates the mark, adds generic terms to the mark, or deletes or rearranges letters in the mark. *See GoPets*, 657 F.3d at 1032; *DPST Intern., Inc. v. Nahum*, 624 F.3d 1213, 1222 (9th Cir. 2010).

11. In considering whether NEV had a bad faith intent to profit from the use of the Gocables.com domain name, the most important factors are the unique circumstances of the case. *Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1190, 1220 (9th Cir. 2012).

12. In addition, the Court may consider the following nine non-exclusive factors listed in 15 U.S.C. § 1125(d)(1)(B)(I) to determine NEV's bad faith:

A. The trademark or other intellectual property rights of NEV, if any, in the Gocables.com domain name;

B. The extent to which the Gocables.com domain name consists of the legal name of an entity, or a name that is otherwise commonly used to identify that entity;

C. NEV's prior use, if any, of the Gocables.com domain name in connection with the bona fide offering of any goods or services;

D. NEV's bona fide noncommercial or fair use of the Cables To Go trademark in a site accessible under the Gocables.com domain name;

E. NEV's intent to divert consumers from Lastar's online location to a site accessible under the Gocables.com domain name that could harm the goodwill represented by the Cables To Go trademark, either for commercial gain or with the intent to tarnish or disparage that trademark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

F. NEV's offer to transfer, sell, or otherwise assign the Gocables.com domain name to Lastar or any third party for financial gain without having used, or having an intent to use, the Gocables.com domain name in a bona

fide offering of any goods or services, or NEV's prior conduct indicating a pattern of such conduct;

G.     NEV's provision of material and misleading false contact information when applying for the registration of the Gocables.com domain name, NEV's intentional failure to maintain accurate contact information, or NEV's prior conduct indicating a pattern of such conduct;

H.     NEV's registration or acquisition of multiple domain names which it knew were identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

I.     The extent to which the Cables To Go trademark incorporated in NEV's Gocables.com domain name registration was, or was not, distinctive and famous.

*See Rearden*, 683 F.3d at 1220.

13.     Section 1125(d)(1)(B)(ii) of Title 15 of the United States Code provides for a "bad faith safe harbor" if the Court finds that NEV believed, and had reasonable grounds to believe, that its use of the Gocables.com domain name was a fair use or otherwise lawful.

14.     The bad faith safe harbor of 15 U.S.C. § 1125(d)(1)(B)(ii) must be invoked sparingly and only in the most unusual cases; a party who acts even partially in bad faith does not qualify for the safe harbor defense.  *See GoPets*, 657 F.3d at 1033.

15.     To succeed on its reverse domain highjacking claim, NEV must establish that GoDaddy transferred the Gocables.com domain name to Lastar based on Lastar's knowing and material misrepresentation that the Gocables.com domain name was confusingly similar to Lastar's Cables To Go trademark.  15 U.S.C. § 1114(2)(D)(iv).

16.     Under the Declaratory Relief Act, 28 U.S.C. § 2201, this Court may declare the rights and other legal relations of any interested party seeking such declaration.

17.     For Lastar to prevail on its cybersquatting counterclaim under 15 U.S.C. § 1125(d), Lastar must establish that NEV registered, trafficked in, or used the Gocables.com domain name, that the  Gocables.com domain name was confusingly similar to Lastar's Cables To Go trademark, that Lastar's Cables To Go trademark was distinctive when NEV registered the Gocables.com domain name, and that NEV had a bad faith intent to profit from the Gocables.com domain name.

18.     For NEV to prevail on its equitable estoppel defense, NEV must establish that Lastar's conduct in failing to immediately register the Gocables.com domain name led to NEV's registration and use of the Gocables.com domain name, and that NEV was injured by relying on Lastar's conduct.  *See James v. Nelson*, 90 F.2d 910, 918 (9th Cir. 1937).

19.     Any Conclusion of Law erroneously categorized above as a Finding of Fact is hereby incorporated into these Conclusions of Law.


Date:  December 8, 2014

Terry J. Hatter, Jr.
Senior United States District Judge